We'll turn next to the regular argued calendar. And the first argument there is Celestin v. Unigestion holding number 2014-12. My name is Rodney Austin. My name is Rodney Austin and I am presenting Hold on one second. Is the sound all set? It should be, yeah. Okay. If you can just speak more directly into your computer. Mr. Austin, the volume was a little bit low. If you could start over and maybe try speaking directly into the microphone. Great. Good morning, your honor. I can hear you. I don't know how clearly though. Why don't you try it and we'll see. Good morning, your honor. Yes. My name is Rodney Austin and I represent plaintiff Celestin v. Mather. With the permission of the court, I'd like to reserve one minute for a rebuttal. Granted. May it please the court. This case is about whether the defenses of the Act of State Doctrine and form that convenes are applicable to the facts as set forth in the plaintiff's second amended complaint that was dismissed by the district court. The court, this court requested that the parties supplement the agreed and address three issues. I'd like to address those three issues in addition to the four of them convenience. The Act of State Doctrine does not, does apply only when a court is required to declare an official act of foreign government valid as a matter of foreign law or international law and not also when the act is wrongful as a matter of U.S. federal or state laws. We contend that the Act of State Doctrine is not applicable in this case because the laws that were violated hold U.S. federal and state laws. As this, as U.S. Supreme Court held in Hartford by insurance versus California, that the Sherman Act, which is one of the laws that are in violation here, applies to foreign conduct that was meant to produce and produce a substantial effect in the United States. The facts of this case are that all the actions occurred in the United States.  The only thing that occurred in Haiti is the scheme that the defendants, appellees, created to charge additional fees and money transfer on telephone calls to Haiti. All the actions, all the fees were collected here in the United States. None of them were collected in Haiti. And as such, the Act of State Doctrine would not apply because the acts did not occur within Haitian territory. They all occurred within the United States. And as the Ninth Circuit held in Liu versus the Republic of China, the Act of State Doctrine does not protect foreign sovereigns' acts that are consummated in the U.S. And that is exactly what is happening here. Furthermore, we have- Mr. Austin, is this what you argued in your briefs, because it seemed, in your original briefs, because it seems like the focus there was very much on arguing that the challenged act is not the collection of fees, it's the unlawful orders. And it seems as if your brief spent a lot of time talking about the unlawfulness of the orders that were issued in Haiti. Your Honor, from the district court, from the outset of this case, we argued that the acts were unlawful. The Act of State Doctrine would not apply because the acts only occurred in the U.S. Yes, we spent a lot of time arguing that the acts were unlawful, because the district court, in its ruling, painstakingly indicated that the acts were official in nature. And because the acts were official in nature, the district court could not make a determination as to the validity or invalidity of those acts. However, in our brief for the district court, we argued that whether the acts were legal or illegal under Haitian law would not be dispositive as to whether the Act of State Doctrine was applicable, because all the acts occurred within the United States. And if the acts occurred within the United States, the Act of State Doctrine simply does not apply. And the second issue that the court asked as a supplemental brief thought was whether any or all of the plaintiffs' cause of action required a court to express a view about the legality on the Haitian or international law to declare invalid and effective as a rule of decision to the courts of this country. Again, because the acts, all the acts occurred within the United States, as pled in the second amended complaint, there is no reason or no need for the court to make a determination as to their legality on the Haitian or international law, because all the laws that are broken are U.S. laws. And what we have here is the Haitian government telling U.S. companies, because of the six corporate defendants, four of them are U.S. companies. So they're telling U.S. companies to break U.S. laws within the U.S. and then they claim it's an Act of State and basically ruling in lieu that is not possible of the actions were consummated within the United States. So you wouldn't even get to a rule of decision because as the Kirkpatrick Court indicated, the act within its own boundaries of a foreign state becomes a rule of decision for the courts of this country. The acts were not within a foreign country. The acts were not within Haiti. The acts were totally in the United States. And as such, the rule of our- It's not so much, counsel, where the actions were. I think that the court in Kirkpatrick was saying, we don't have to find that an act of the Haitian government was invalid. It's that it has consequences under U.S. law that U.S. courts can adjudicate whether or not that action by the Haitian government was legitimate or not. Isn't that what the court was saying there? Yes, Your Honor, but to take it a step further, because of the act, and the reason why the legality or illegality on the Haitian or international law does not matter is because all the actions occurred within the United States in violation of U.S. law. And for all the cases, the precedence of cases where the active state doctrine was applicable, with all of those cases, actions actually occurred within that foreign sovereign. They were not in the U.S. So there's a difference, a huge difference between what happened in this case and the cases that were set in precedent. And thirdly, the court asked if we gave or forfeited any of the arguments presented below. We did not. From the time of the preliminary conference, we maintained that because the actions only occurred within the United States, the active state doctrine would not apply. And it's inexplicable that the district court at no time- But Mr. Hudson, don't you also, a primary argument is that the reason the active state doctrine does not apply is that these were not official or formal or appropriately called active states. I mean, that's, throughout the brief, the argument is, well, this was not, because these were not passed by the legislature, this was not legitimate. Isn't that what you've argued? Not that the legitimacy of the orders is irrelevant, and that, I mean, I didn't really get that from the briefing. Yes, Your Honor, but both arguments are true. Yes, we did argue that the actions were not legitimate. We also argued that whether the acts were legal or illegal under Haitian law doesn't make a difference because the active state doctrine would not apply simply because all of the actions occurred within the United States and not in Haiti. And the fourth issue I'd like to address is a forum not convened. Now, in a forum not convened analysis, as we approach the U.S. Supreme Court's doctrine, Irigaro versus United Tech, there's a three-part test. And the first is the level of deference that is to be afforded to plaintiffs' choice of forum. These are not fat plaintiffs. They're individuals who are actually incurred harm because they are the individuals who are charged the extra monies to send money transfers to Haiti and to make phone calls to Haiti. Second, is Haiti an adequate forum for this lawsuit? In no way, shape, or form is Haiti an adequate forum for this lawsuit. In fact, as we pointed out to the district court and to this court, the judges in Haiti are not independent of the executive and the executive is a part of this case. In 2019, when this case was going on, the head of the judiciary in Haiti issued a letter that because they were not independent, they were not going to go on strike. And in fact, the judges went on strike because the executive determines who gets paid and when they should be paid. So when we look at this case as a whole, Haiti cannot be an adequate forum for this matter. They don't have the capacity. They don't have any antitrust laws. And most importantly, in order for this case to be adjudicated in Haiti, there must be a criminal conviction first because of the allegations that are made. Everyone knows that that would never happen in Haiti because the executive controls the judiciary. So Haiti is not an adequate forum for this matter. And as such, formal convenience is not applicable as well as the actual state doctrine is not applicable in this matter. Thank you, Mr. Austin. You're reserved a minute for rebuttal. We'll hear from the appellees. I understand that three of you are dividing the time. Could you just introduce yourselves and the issues that you're gonna discuss in the order that you want to? I apologize. Good morning, Judge Park. Good morning, your honors. May it please the court. Andy Fishkin, I've been asked to address on behalf of my client, Western Union, and the remaining corporate defendants, Caribbean Airmail, Unitransfer, Unibank, and Unigestion. Why the Second Amendment complaint was properly dismissed against the corporate defendants based on the act of state doctrine. And my colleague, Mr. McLaney, is prepared to address on behalf of his client, Unigestion, and the remaining corporate defendants, including Western Union, why the foreign nonconvenience doctrine also mandated dismissal of the Second Amendment complaint against the corporate defendants. Your honors, given the substance of the court's discussion with plaintiff's appellant's counsel, the corporate defendants are prepared to rely on the arguments contained in their brief on the act of state doctrine. Well, I guess, do you want to address the W.S. Kirkpatrick case? I found it odd that the court ordered supplemental briefing specified that case, and didn't even get a citation from your side to that. It's a Supreme Court precedent, and I'd like you to address it, please. Sure, your honor. I mean, the Kirkpatrick case holds that the act of state doctrine applies where the release sought requires the court in the United States to declare invalid the official act of a foreign sovereign performed within its territory. We meet all of the requirements here for application of the act of state doctrine under the Kirkpatrick case. We have an official act in Haiti that circulars in the orders, which were part of the allegedly unlawful agreement. It was certainly performed within the territory of Haiti, and all of the plaintiff's claims require that the court pass judgment on the validity of what occurred in Haiti. Why is that so, counsel? That last point, you say all of the claims require. Supposing we assume that everything Haiti did was lawful, doesn't the case proceed in any event? Well, certainly, your honor, if the court were to find that everything that- No, we don't have to find it. We could assume it. We could just say we'll assume it for purposes of the argument and proceed to determine whether a violation occurred without ever having to decide whether what Haiti did was illegal. Can't we do that? Did you hear the question? I think I stepped on the question. I apologize. Okay. I believe the court asked whether if we assume that what occurred in Haiti was legal, can the plaintiff's claims proceed. Right. And your honor, I don't believe that the court can assume what occurred in Haiti was legal under the active state doctrine. Why not? Because your honor, the active state doctrine states that to the extent that claims are made, which require a determination as to the validity of what occurred in the foreign sovereign- But how can the claim require it if we are willing to assume it was lawful? Where's the requirement? Your honor, the claims require, all of the claims in this case, other than perhaps the antitrust claim, hinge on whether or not what occurred, the act that occurred in Haiti was lawful. Well, you're saying that, and I'm trying to understand the basis for your saying it. You're saying it's required that the court determine it. And I'm putting to you that the court is not required because the court can assume, as you say, that they're lawful and then move on. Why not? Well, I'm not saying that the court can assume that, your honor. I'm saying that- Well, I understand you're not saying that, but you've got to give me some reason why a court cannot say it. I understand you disagree. That's why you're here. But you can't just say it is required and not explain to us why it's required. Well, I mean, Kirkpatrick says that where the relief requires the court to declare and vow the official act of a foreign sovereign performed within its territory. Yes, but another court in another case can't possibly know why it's required in this case. And I keep asking you, why is it required in this case that the court determine the lawfulness of the acts under Haitian law? Well, because all the claims hinge on that, your honor, with other than- Well, you say they hinge. All right, so you think you're better off if the court says those acts are lawful, right? I think that we are better, yes, your honor. Okay, so supposing a court says to you, counsel, you say they're lawful. I'm willing to agree with you. You win on that point. Now we're going on to point two. What's wrong with that? I'm not sure what your honor is asking in terms of point two. I'm asking you as many ways as I can think. Once you say to the court, the first question is whether the acts of the Haitian government are lawful in Haiti. And the court says to you, don't bother arguing that at any length. I'm willing to agree with you for purposes of this case. Now we go on to point two. Was there a violation because of what was done in the United States? No, your honor, there wasn't. If we assume that what occurred-  If we assume, your honor, that the acts that occurred in Haiti were lawful, then that is dispositive of all of the plaintiff's claims. Why? Because all of the plaintiff's claims, other than perhaps, other than perhaps, the anti-trust claim- Well, of course other than perhaps the anti-trust case. That's what the case is about. Yeah, what do you mean by other than perhaps? Are you conceding that for as to the Sherman Act claim that it doesn't hinge on the validity of acts of the Haitian government? It does not hinge entirely on acts of the Haitian government. And I would cite the court to the one shipping case where this court in 1987 affirmed the dismissal based on the act of state doctrine of a Sherman Act claim that involved price fixing agreement to which a foreign government instrumentality was a party. And frankly, the spectrum stores case is particularly instructive in that regard. That was a case, that was a putative class action in which the appellants alleged that Applebee's participated in a conspiracy to fix prices of refined petroleum products in the United States, which appellants argued was a per se violation of the Sherman Act. The district court dismissed the appellant's claims in part on the basis of the act of state doctrine because the claims required the court to sit in judgment on the decision and agreements reached by the foreign sovereigns. And this is why we asked you to address the Supreme Court's decision in Kirkpatrick and our own decision in the vitamin C case just last year. Don't those, is there some tension? Do they abrogate the precedents that you're citing, which I think predate both of those? No, they don't. I believe that the spectrum stores case postdates Kirkpatrick, certainly the vitamin C case postdates spectrum stores. I mean, a couple of points on the vitamin C case. It was decided on international comedy grounds. And so the court did not need to reach the act of state question. Their defendants relied on two closely related doctrines in defense of their conduct abroad. It was the act of state doctrine and the foreign sovereign compulsion. But the court said, we find it unnecessary to reach a decision as to the applicability of either doctrine in light of our international comedy holding. So the fact that the court ultimately commented on the act of state doctrine was frankly at most in dicta. And as for whether the dicta in vitamin C can be reconciled with our position on the Sherman Act claim here, yes, we believe it can be. Unlike in vitamin C, the court here can't rule on plaintiff Sherman Act claim without ruling on the legality of Haiti's act and entering into the alleged anti-competitive agreement. I don't mean the validity or legality of their act under Haitian law. That's not what I'm saying. In footnote 44 in vitamin C, the court noted, we're concerned with whether China's regulatory regime was responsible for that conduct, not whether such a Chinese government mandate, if there was one, would itself be legal or valid. The court said accordingly, that the factual predicate for application of the act of state doctrine does not exist here because nothing in the present suit requires the court to declare it valid and thus ineffective as a rule of decision to the courts of this country, the official act of the foreign sovereign. In vitamin C, the foreign sovereign was not, as it is here, a counterparty to an alleged anti-competitive agreement. Instead, it simply put in a framework that required private parties to reach agreements among themselves on vitamin C minimum pricing, which would then be reviewed and enforced by the sovereign. The court was able to find that the individual defendants had entered into a horizontal price fixing agreement without correspondingly finding that the foreign sovereign, which was the Chinese government, had engaged in a violation of law. In other words, the legality of the Chinese act was not an issue as it is here. Here, the very act of the foreign government, the alleged agreement between Haiti and the corporate defendants is what plaintiffs are trying to declare illegal. The district court, therefore, in our case, the district court could not rule on plaintiff's claims and grant the relief they seek without declaring the Haitian government's actions were illegal, not under Haitian law. Look, I think I understand your theory and you're free to pursue it in the district court. When the case, if we remand it, and the district court hears your point that the Haitian action is unlawful, it's lawful, and the court says, perhaps with a little guidance from us, I'm going to assume that you're correct on that. So you win on point one. Then the court says to the plaintiff, present your argument about the antitrust violation in the U.S. And you're free to say, your honor, you don't have to go that far. I've already won. But the court might say, no, you haven't. And then we'll have that issue before us. So you can take your chances. If you're so sure that the lawfulness of the Haitian government ends the case, then you can rest. When the plaintiff puts on its antitrust case, you can sit there quietly and say, this doesn't concern me. You can take your chances. Might not be a wise tactical choice, but you're entitled to do it. But to just sit here and tell us none of that matters is a pretty tough argument. Yeah, your honor, respectfully, and I apologize for repeating myself. I suppose the difference of opinion here, your honor, is that our view of the act of state doctrine is that it does not allow the court to make inquiry. The claims can't require- I understand that, and I'm trying very hard to agree with you on that by suggesting that the lower court can simply assume that you are correct, that the action of the Haitian government is lawful. And then at that point, you could say that, judge, we're leaving the courtroom. We don't care what happens next, because it doesn't matter. You can take that risk if you want. But the plaintiff can say, I think you're wrong, and put on an antitrust case. And then we'll find out who's right. I understand, your honor. Okay, good. Thank you, counsel. I believe Mr. McClammy is next. Thank you, your honors. Again, Jim McClammy, Davis Polk & Wardwell, on behalf of defendant appellee Digicel Haiti and the corporate defendant appellees. Unless your honors has specific questions for me, I plan to focus my time in front of the court on two specific issues related to the four of non-convenience argument. First, with respect to the applicable standard of review, and then second, addressing the decision as rendered by the district court below. It's clear from this court's precedent that the standard of review is a very deferential one, and that the decision as to whether or not to dismiss a case on the grounds of four of non-convenience is really assigned to the discretion of the district court. And there's been nothing presented by the appellants here to warrant a departure from the decision by the district court below. The only thing- How about, is there any impact from recent political instability in Haiti? Your honors, and Judge Park, I think the answer to that question is there's nothing here that changes the factual record with respect to the courts. The appellants here had the opportunity to present to the court their concerns about the Haitian court system. I think- I know, I guess I'm asking about what was recent, since the record maybe, whether that changes the analysis. Yes, your honor. And I think the answer to that is no, especially given how the U.S. courts are concerned about attempting to impose our views as to what works or does not work when making this decision with respect to the four of non-convenience. And the fact is, we presented a declaration in front of the district court, and the district court indicated that it reviewed all the submissions of the parties. And the declaration that we submitted is found at the joint appendix at 87 to 98. And that goes through how the Haitian courts are set up and how they work. And in reviewing that, plus the information provided by the plaintiff appellants, the district court determined that there was nothing that warranted a departure or a finding that the courts of Haiti would be inadequate. And we believe that that decision should be upheld. And in addition to that, the court walked through each of the applicable factors in addressing whether or not four of non-convenience should be granted and made that determination. The fact that that detailed analysis is found in the footnote is really neither here nor there at the end of the day. If it had been above the line, I don't know that plaintiff would have been able to make some of the same arguments, but any suggestion that it was less than a well thought out and apply the applicable standards under governing law is simply misplaced. And Your Honor- Absolutely, totally apart from adequacy of the other forum. The court said that the core operative facts, that's in quotes, the core operative facts of the case have only quote, marginal links to the selected forum. Was that correct? Your Honor, I believe that's absolutely correct. And this takes off of some of what Mr. Fishkin is saying. The way the plaintiffs have pleaded this case from the very beginning is centered on the acts that took place in Haiti and whether or not the acts and the orders there were proper. So when the plaintiffs have pleaded their case and proceeded with their case, grew out with that focus and made that the centerpiece of their pleadings and their presentation- Where were the allegedly illegal fees charged? Those allegedly illegal fees were charged, I believe, in a number of different locations, including the United States or from US- And isn't that the core of the claim that they're charging illegal fees? The core of the claim, it was not just that they were charging illegal fees under just US law. The core of the allegations are also that those fees arose from improper conduct that took place in Haiti and- Well, whether they arose or not, if they were imposed in the US and you agree they were, then how can a court say the core facts have only a marginal link to the US? I think that is because of the way the plaintiffs have, and the appellants have, prosecuted this case by tying everything to these acts being improper acts under Haitian law. I think if your Honor, if your assumption is correct, for example, that the court could just assume that it was proper under Haitian law, the plaintiff's complaint just goes away. The entirety of their allegations are focused on that. And there'd be nothing for them- No, the point is that what Haiti did was proper under Haitian law, not what your clients did. Right, exactly. What Haiti did was proper under Haitian law. I think- Fine, then the Haitian officials are out of the case. But your clients allegedly fixed prices illegally in the US. Only, as plaintiffs have alleged, because of the requirement to process these fees under Haitian law where they are doing business. And I think if you were to assume that that was proper, plaintiff's complaint just essentially falls away the way they have elected to plead it. Well, I guess you're saying the same thing your predecessor said, that you think we have to decide whether what happened is lawful under Haitian law. As presented to your Honors, that's correct. Plaintiffs may have opted to have presented a different case to the District Court and to your Honors, but they didn't do that. Well, they do allege in their complaint the prices charged in the US were illegal. Right? Yes, your Honor, but that is, I would say, encompassed or surrounding that allegation is the underpinnings of what was authorized and required by our clients with respect to these fees by the court. Well, you say that and say, well, you're surrounding it and you say it's required. They're willing to go to court and say, we're only looking at the illegality in the US. Your Honor, they have not said that. They have, in fact, pleaded the case is different than that. Well, their complaint alleges illegal price fixing in the US, does it not? As a result of collecting the fees that were required by the Haitian government. Regardless of what is the result of it, maybe the result of 50 different things, but they say an illegality happened in the US. That's in their complaint. Yes, and no one, I think, is denying that. I think the point is that their premise is, and it's unclear to me how they've done it, but that the reason why they're saying that that's improper in a lot of respects is tied to the actual state of the Haitian government. Thank you. Okay, thank you, counsel. Thank you, Your Honor. And finally, we'll hear from Mr. Madsen. Good morning, Your Honors. May it please the court. My name is Bertrand Madsen, and I represent the government of Paris, Jovenel Moïse, Jocelyne Priver, Michel Martelly, and the government of Haiti. Your Honors, unless the court has questions, we are prepared to rest on our brief on appeal and on the brief on appeal that was filed by the corporate appellees, which we joined pursuant to Rule 28-I of the Federal Rules of Appellate Procedure in requesting that the decision of the district court be affirmed. Any questions? Okay, thank you, counsel. Thank you, Your Honors. I yell my time back to the court. Thank you, counsel. Mr. Austin, you've reserved a minute for rebuttal. Yes, Your Honor, just briefly. In regards to the forum that convened, as the jury pointed out, the district court indicated that the cooperative facts have marginal links to the selected forum. Within our brief to the district court, we provided a list of invoices where citizens were charged the additional fees here in the U.S. All the fees were paid here in the U.S. None of it happened outside Haiti. And in regards to our complaints, each and every count and each, we specified what U.S. law was violated. So it's not as if we just- Mr. Austin, I'm sorry, can I just ask you, going back for a moment to the active state question, it's true, you do allege that there is illegality in the United States, but isn't part of why you're saying what happened in the United States is illegal is because it's based on false claims in Haiti about the propriety of these fees? Like, how does your argument go forward to sort of take the reverse of what Judge Newman was asking your adversaries? If, in fact, what happened in Haiti is lawful, what is the basis for your claim that there's illegality in the United States? Because as you pleaded it, you say that the Haitian officials falsely said that these taxes were proper. They falsely said that this was part of an appropriate tax regime. If that goes away, if we're not looking at, if we're assuming that what happened in Haiti is lawful, what is your basis for saying, how do you frame the illegality in the United States? Well, the illegality is that, for example, there are four of the corporations are U.S. corporations, and they, in essence, are charging additional money to U.S. citizens and residents to send monies to Haiti because there is a set fee when you're doing a money transfer, but then there's this additional $1.50 for each money transfer and $0.05 for each telephone call. But within the U.S., because it should be noted that there's one major money transfer company that did not participate in this scheme, and that's MoneyGram, and they're not a party to this rule because they did not participate in this scheme. So there's still a violation of U.S. laws within the U.S., both state and federal laws, as fled in the complaint. And that is why we are- Let me just, I'm sorry, let me just see if I can ask my question a little more directly. In this hypothetical I'm giving you, there is no scheme. There is a lawful act of Haiti saying we're gonna charge these fees and impose it. How is that, if we accept that what happened in Haiti is lawful and that this was proper, how is that violating U.S. law? What have they done wrong that you can say this is a violation if your claim as presented is the reason this is improper is because it's a scheme and because they are false, Haiti is falsely saying that this is okay. If that is not the case, what's the basis for saying this violates the law? Right, because if you take, as Your Honor is posing the question, if you take a Haiti out of the equation of what happened in Haiti out of the equation, then what we are left with is that Western Union, CAB, Unigestion, they already set the fees with the individuals who go to send money. So each transaction is a contract and it's based on whatever fee they already set. Then there is this additional fee that they are charging to each individual who enter into a contract with them. And where is the, because this additional fee is not part of their original fees when you are sending money through a money transfer. So under what scenario does this additional fee violate the law? And it violates both state and federal law because here you have, they're charging an additional fee and then when they receive, they tell you that, okay, this is for whatever purpose, but you cannot, for example, you cannot transfer the money unless you pay this additional fee. And so this is fraudulent. This is fraudulent under US law. And as such, the actual state doctrine does not apply to the facts of this case because all the actual actions that cause the harm here in the US and not in Haiti. Mr. Ross, let me try it a slightly different way. Your complaint does have some allegations that Haiti acted unlawfully. Is that correct? Yeah. Yes, Your Honor. Do you think you have to win on those allegations in order to prevail on your case in the district court? I don't think we have to win on those allegations. There are a part of it and it's putting it in context because the district court in Haiti- Okay, so the answer is no. No. You don't. Although you have some allegations of Haitian law violations, maybe it's your fallback claim, is you don't think you have to win on those allegations in order to win on your antitrust claim, right? That is correct. That is correct, Your Honor. Okay. Mr. Delphi, you ask the court to prepare and remand this case. Thank you. Thank you, counsel. We'll take the matter under advisement. The next-